## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**SIXTO ALBERTO SORIANO,**          :

          **Petitioner**          :

                        **CIVIL ACTION NO. 3:16-0271**

      **v.**          :

                        **(Judge Mannion)**

**MARY SABOL, Warden, *et al.*,**          :

        **Respondents**          :

### MEMORANDUM

Before the court is petitioner Sixto Alberto Soriano's petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. §2241. (Doc. 1). Specifically, the petitioner claims that he has suffered an unreasonably prolonged mandatory detention, in violation of 8 U.S.C. §1226, and that he has not been afforded the procedural and substantive due process protections required by the United States Constitution. He requests a constitutionally adequate bond hearing conducted by this court or alternatively an Immigration Judge, where the respondents must demonstrate that the petitioner's continued detention is justified. For the reasons set forth below, the court will **GRANT** the petition and order that an Immigration Judge conduct an individualized bond hearing within thirty (30) days.

## I.    RELEVANT BACKGROUND

By way of relevant background, the petitioner, Sixto Alberto Soriano, is a thirty-seven (37) year old native of Ecuador and a lawful permanent resident of the United States. (Doc. 1, Ex. A). The petitioner entered the United States with his father, a naturalized United States citizen, at the age of ten. (Doc. 1, Ex. C). He has resided in the United States as a permanent resident since that time. He attended grade school, middle school, and high school in the United States. (Doc. 1, Ex. D). Furthermore, the petitioner married Monica Soriano in 2013 in Harrisburg, where the couple resides with their two children. (Doc. 1, ¶ 13).

In 1998, the petitioner was arrested for and pled guilty to possession of a small amount of marijuana in violation of 35 Pa. Stat. Ann. §780-113(a)(31). (Doc. 1, Ex. G). Later, in 1999, petitioner pled guilty to one count of possession with intent to manufacture or deliver marijuana in violation of 35 Pa. Stat. Ann. §780-113(a)(30), and was sentenced to 12 months of probation. *Id.* Then, in 2000, the petitioner again pled guilty to one count of possession with intent to manufacture or deliver marijuana in violation of 35 Pa. Stat. Ann. §780-113(a)(30) and one count of possession with intent to use drug paraphernalia in violation of 35 Pa. Stat. Ann. §780-113(a)(32), and was

sentenced to six (6) to twenty-three (23) months in prison. *Id.*

Fifteen years later, on July 24, 2015, the petitioner was taken into custody by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE") and placed in removal proceedings at York County Prison. (Doc. 1, Ex. H). The basis for removal of the petitioner is that he is a non-citizen and his prior marijuana offenses allegedly constitute aggravated felonies pursuant to 8 U.S.C. §1227(a)(2). *Id.* The petitioner remains in "mandatory custody" at York County Prison pursuant to 8 U.S.C. §1226(c). (Doc. 6, Ex. G).

Several hearings related to the removal proceeding have been conducted. Further, on November 4, 2015, the petitioner submitted a Form N-600 Application for Certificate of Citizenship based on claims that he is entitled to citizenship through naturalization of his father. (Doc. 5, Ex. P). This application was denied on December 2, 2015. *Id.*

On February 17, 2016, the petitioner filed the instant petition for writ of habeas corpus, seeking a bond hearing. (Doc. 1). That same day, this court ordered that the respondent show cause why the petitioner should not receive the relief he seeks. (Doc. 3). On March 2, 2016, the respondent filed its response to the petition for writ of habeas corpus. (Doc. 6). Then, on March

16, 2016, the petitioner filed his reply to the respondent's brief. (Doc. 7).

In addition, on February 22, 2016, before the respondent filed her brief in response to the instant petition, DHS filed a motion asking the Immigration Judge to issue an immediate order of removal against the petitioner. (Doc. 6, Ex. Q). The Immigration Judge subsequently granted DHS' motion and ordered that the petitioner be removed to Ecuador. (Doc. 7, Ex. 10). However, the petitioner has already appealed the order to the Board of Immigration Appeals ("BIA"), and this appeal is currently pending. (Doc. 7, Ex. E).

Having reviewed both parties submissions, the court is now ready to rule on the Mr. Soriano's petition for writ of habeas corpus.


## II.  DISCUSSION

The instant petition for habeas corpus is grounded upon the petitioner's belief that he has been detained under 8 U.S.C. §1226(c) for an unreasonable amount of time, in violation of the Due Process Clause of the Fifth Amendment and *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011). The respondent, on the other hand, argues that the duration of his mandatory detention is reasonable and comports with due process afforded to aliens. The question before the court, then, is whether, under the facts of

this case, the petitioner's mandatory detention has become unreasonably prolonged such that he is entitled to an individualized bond hearing.

Under 8 U.S.C. §1226(c), the government must take custody of any alien who has committed an aggravated felony pursuant to 8 U.S.C. §1227(a)(2)(A)(iii) or committed a violation of any law relating to a controlled substance under 8 U.S.C. §1182(a)(2)(A)(i)(II). The provision clearly demands that, prior to a final removal order, an alien be detained without being afforded a bond hearing. §1226(c). However, this "mandatory detention" provision is not without limits. In *Demore v. Kim*, the United States Supreme Court concluded that "[d]etention during removal proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003). However, the Third Circuit has interpreted *Demore* and "conclude[d] that [§1226(c)] implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3d Cir. 2011). Where detention has become unreasonable, "the Due Process Clause demands a hearing, at which the Government bears the

burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Id.* at 233.

Determining whether an individual's detention is no longer reasonable in length is "a fact-dependent inquiry that will vary depending on individual circumstances." *Diop*, 656 F.3d at 233; *see also* Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 269 (3d Cir. 2012). Such an inquiry must account for delay caused by errors necessitating appeal, as well as any continuances or delays favorable to the detainee. *Diop*, 656 F.3d at 233-34. While declining to establish a bright-line rule for the length of time that would constitute an unreasonable detention, the Third Circuit noted that "detention under §1226 lasts roughly a month and a half in the majority of cases in which it is invoked, and about five months in the minority of cases in which an alien chooses to appeal," *id.,* and as a result, "the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds." *Id.* at 234.

The Third Circuit in *Chavez-Alvarez* further characterized the fact-dependent inquiry described in *Diop* as a balancing test. It also clearly rejected the argument that "the conduct of either party . . . dictates a conclusion that the detention is reasonable." Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 477 (3d Cir. 2015). Instead, the Court found that

the reasonableness of government conduct and merit of the petitioner's challenges are not dispositive standing alone, and are only relevant when "weigh[ing] the various aspects of [the] case to determine whether, and when, a tipping point has been reached on the reasonableness of [the] detention." *Id.* More specifically, courts should not find that delay caused by a petitioner's challenges precludes a finding of unreasonable detention because such a finding essentially punishes a petitioner for pursuing applicable legal remedies. *Id.* at 475 (citing *Leslie,* 678 F.3d at 265). However, under narrow circumstances, when a petitioner acts in *bad faith* to delay or stall the proceeding, this tactic may preclude a finding of unreasonable detention. *Chavez-Alvarez,* 783 F.3d at 476. Bad faith exists when a petitioner challenges aspects of the government's case that do not present bona fide or real issues, or are simply frivolous or meritless arguments. *Id.*

In *Chavez-Alvarez,* the Court applied the balancing framework and ultimately found that "beginning sometime after the six-month timeframe considered by *Demore,* and certainly by the time Chavez-Alvarez had been detained for one year, the burdens to Chavez-Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." *Chavez-Alvarez,* 783 F.3d at 478. The respondent

7

cites to this language in support of its opposition to the instant petition. However, the respondent appears to interpret this language as stating that a detention between six (6) months and one (1) year is "acceptable" and a habeas petition commenced in such time-frame is "premature." (Doc. 6, p. 11). As is clearly evident in the previous discussion of applicable law, this is not what *Chavez-Alvarez* stands for. Instead, the Circuit Court in *Chavez-Alvarez* found that at some point in time after six (6) months of detention, the facts related to petitioner Chavez-Alvarez' detainment tipped such that due process required the government provide Chavez-Alvarez with a bond hearing. The Court arrived at this conclusion after conducting a *fact-intensive investigation* of the circumstances, and did not arrive at this conclusion solely after counting the number of days that Chavez-Alvarez had been detained—as the respondent seems to infer.[1] Thus, the court rejects the respondent's argument that the petition is premature solely because the petitioner has not yet been detained for a full year.

---

[1] In *Chavez-Alvarez*, the Court found that one (1) year of detention was presumptively unreasonable; however, this court interprets *Chavez-Alvarez* as also concluding that detention between six (6) months and one (1) year may well be unreasonable depending upon the factual circumstances. Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 478 (3d Cir. 2015) (citing  Diop v. ICE/Homeland Sec., 656 F.3d 221, 233-34 (3d Cir. 2011); Demore v. Kim, 538 U.S. 510, 531 (2003)).

Instead, the court must follow the balancing framework established in *Chavez-Alvarez* and conduct a factual inquiry to determine whether the petitioner's mandatory detention is no longer reasonable. The petitioner, here, was taken into ICE custody on July 24, 2015, and has remained in custody since that date. He has not been provided a bond hearing. As of today, the petitioner has been detained for nine (9) months. This is longer than the six-month time-frame outlined in *Demore* and also comports with Third Circuit precedent that finds any detention beyond the five month threshold to be suspect. Diop v. ICE/Homeland Sec., 656 F.3d 221, 233-34 (3d Cir. 2011). Further, nine months is within the six to twelve month time-frame contemplated in *Chavez-Alvarez.* Given the suspect nature of the length of detention, the court must carefully examine the petitioner's circumstances to determine whether this length is reasonable and comports with due process or whether it reaches the "tipping point" and requires a bond hearing.

Since being taken into custody, the petitioner requested two continuances to his hearing before the Immigration Judge. The first continuance allowed the petitioner to file an N-600 Application for Certificate of Citizenship, which was within his legal rights to do. (Doc. 6, Ex. J). The second continuance was granted because the petitioner's original counsel

9

voluntarily withdrew just before the original hearing date, and the petitioner's new counsel needed time to prepare so that he was able to adequately represent the petitioner. (Doc. 6, Exs. M, N, O). While these delays were caused by the petitioner, they were good faith attempts to pursue legal remedies. The respondent points to these continuances in an effort to avoid a finding that the petitioner's detention is unreasonably long.

The respondent also cites to the petitioner's challenges to removal as evidence that the petitioner's actions are dilatory and support a finding that the petitioner's length of detention is reasonable. The petitioner raises two distinct challenges to removal: 1) he claims to have citizenship pursuant to 8 U.S.C. §1432(a); and 2) he claims he is entitled to cancellation of removal under 8 U.S.C. §1229b(a). (Doc. 167, ¶¶ 18-21). While the respondent argues that these claims lack merit and are only raised to delay the removal proceedings, the court finds otherwise. (Doc. 6, p. 7). When this petition was filed with the court, the Immigration Judge had yet to issue an order regarding the petitioner's removal. However, on February 22, 2016, the DHS filed a motion asking the Immigration Judge to issue an immediate order of removal against the petitioner. (Doc. 6, Ex. Q). The Immigration Judge subsequently granted DHS' motion, denied both of the petitioner's challenges, and ordered

that the petitioner be removed to Ecuador. (Doc. 7, Ex. 10). The petitioner immediately appealed the order to the BIA, where it remains pending. (Doc. 7, Ex. E). The petitioner's appeal was based upon the IJ's alleged misinterpretation of previous BIA decisions and Third Circuit cases, which, if applied as the petitioner interprets would support his challenges to removal and instead arguably result in cancellation of removal.

The petitioner's challenges and appeal are based upon bona fide claims and are not frivolous or made in bad faith. After reviewing the IJ's March 10, 2016 decision and accompanying order for removal, the court finds that the legal analysis is by no means straightforward or conclusive. (Doc. 7, Ex. D). The complexity of these claims and the unsettled nature of the corresponding legal analysis clearly demonstrate that the petitioner's efforts to appeal the IJ's decision are bona fide legal challenges based upon "real issues." Specifically, petitioner's derivative citizenship claim arguably rests upon interpretation of Ecuadorian law and also on an area of unsettled federal law, law that the Third Circuit has expressly declined to clarify as of yet. *See* Morgan v. Attorney Gen. of U.S., 432 F.3d 226, 234 (3d Cir. 2005) ("Conceivably, some jurisdictions might consider parties 'legally separated' if they lived apart for a period of time without seeking any governmental

imprimatur. We know of no jurisdiction that has adopted such a policy and we leave that issue for another day.").

In addition, the petitioner challenges removal on the ground that his prior criminal offense under 35 Pa. Stat. Ann. §780-113(a)(30) does not constitute an aggravated felony under federal law, and he is, therefore, eligible for discretionary relief from removal. This challenge is based upon the Third Circuit case, *Jeune v. Attorney General*, which finds that some felonies under §780-113(a)(30) are not aggravated felonies, and that "something more than the bare fact of conviction is required to reach that threshold." 476 F.3d 199, 205 (3d Cir. 2007).

However, after the *Jeune* decision, the Supreme Court decided *Moncrieffe v. Holder,* in which it held that a state conviction qualifies as an "aggravated felony" under the INA if, after employing the "categorical approach," the court finds that a state conviction necessarily involved facts that correspond to a federal offense punishable as a felony under 18 U.S.C. §§ 924(c)(2), 3559(a)(5). Moncrieffe v. Holder, 133 S. Ct. 1678, 1682 (2013). Specifically, the Court held: "[i]f a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, it is not an

aggravated felony under the INA. *Id.* at 1680.

In arriving at this conclusion, the Court not only applied, but also clarified the "categorical approach," which governs the inquiry. In describing the "categorical approach," the Supreme Court stated:

> Under this approach we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the "generic" federal definition of a corresponding aggravated felony. By "generic," we mean the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison. Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense "necessarily" involved facts equating to the generic federal offense. Whether the noncitizen's actual conduct involved such facts is quite irrelevant.

Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) (internal citations and quotations omitted). However, this approach is not without limitation. The Court articulates two qualifications to the categorical approach:

> First, our cases have addressed state statutes that contain several different crimes, each described separately, and we have held that a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record'of the factual basis for the plea. Second, our focus on the minimum conduct criminalized by the state statute is not an invitation to apply "legal imagination" to the state offense; there must be a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.

13

*Id.* at 1684-85 (internal citations and quotations omitted) (emphasis added).

The petitioner's challenge, in essence, argues that application of the categorical approach outlined in *Moncrieffe* would result in a finding that the petitioner's state court conviction does not involve facts equating to an aggravated felony under federal law because the state conviction does not demonstrate remuneration or more than a small amount of marijuana. In support of this argument, the petitioner has cited, not only the *Jeune* opinion, but also to a recent Third Circuit case, *Walker v. Att'y Gen.*, which reconciles and affirms the holding in *Jeune* in light of *Moncrieffe.* Walker v. Att'y Gen., 625 Fed. Appx. 87, 91 (3d Cir. 2015) (though this opinion is non-precedential, the court finds it highly persuasive and consistent with previous Third Circuit and Supreme Court precedent) ("'[A]n accused can be charged with, and prosecuted for, any offense which the Commonwealth thinks it can prove.' Com. v. Pagan, 315 Pa.Super. 7, 461 A.2d 321, 322 n. 1 (1983). Just so here. It is thus 'a realistic probability, not a theoretical possibility, that the State would apply [35 Pa. Stat. Ann. §780-113(a)(30)] to conduct that falls outside' the definition of an aggravated felony. Moncrieffe v. Holder, 133 S. Ct. 1678, 1685 (2013) As such, we cannot say that Walker was convicted of an aggravated felony."). Moreover, the petitioner identifies other BIA opinions

14

that are consistent with *Jeune* and *Walker*, and further support an argument that his conviction is not an aggravated felony, even under the categorical approach outlined in *Moncrieffe*.

While it is not this court's job to conduct the categorical approach and determine whether the petitioner is entitled to discretionary relief from removal, the court notes that this analysis is anything but simple. It is a complex legal question, as evidenced by the case-law cited above and by the IJ's lengthy, extensive discussion on the topic in its March 10, 2016 order. *See* Doc. 7, Ex. D, pp. 13-20. Thus, the court finds, without hesitation, that the petitioner's challenges to removal on the abovementioned grounds and continued efforts to appeal based on such challenges present "real issues," and are made in good faith. Thus, any past or future delay resulting from the petitioner's challenges to removal cannot be viewed as bad faith, dilatory tactics, and consequently, the court finds that these facts do not weigh in favor of the respondent's argument that the length of detention is reasonable.

Moreover, regardless of whether the BIA affirms or vacates the IJ's decision, the petitioner's removal proceedings will continue for an undetermined amount of time. If the BIA affirms, then the petitioner claims he will appeal the ruling to the Third Circuit, which could take many months. And,

if the BIA vacates the IJ's decision, it will remand the petitioner's case to the IJ, which could also last for several months. *See* Doc. 7, p. 4. The BIA has yet to decide the appeal, and therefore, it is likely that a final decision on the removal proceedings will not occur for a significant, undetermined amount of time. These facts weigh in favor of a finding of unreasonableness.

Following the court's analysis in *Chavez-Alvarez*, the court next concludes that reviewing the petitioner's detention will not put the respondent in a disadvantaged position to make its case at the bond hearing. The government has had custody of the petitioner for nine (9) months and, therefore, has had ample time to assess whether he would pose a flight risk or endanger the community. *See* Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 477 (3d Cir. 2015). Finally, as the court in *Chavez-Alvarez* aptly noted, there is a concern in civil detention cases such as this one about the conditions of confinement. *Id.* at 478 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). The Third Circuit stated,

> we cannot ignore the conditions of confinement. Chavez-Alvarez
> is being held in detention at the York County Prison with those
> serving terms of imprisonment as a penalty for their crimes.
> Among our concerns about deprivations to liberties brought about
> by section 1226(c) is the reality that merely calling a confinement
> "civil detention" does not, of itself, meaningfully differentiate it
> from penal measures. Kansas v. Hendricks, 521 U.S. 346, 361,
> 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *see also* Application of

> Gault, 387 U.S. 1, 27, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). As
> the length of the detention grows, the weight given to this aspect
> of his detention increases.

*Chavez-Alvarez*, 783 F.3d at 478. The fact that the petitioner, here, remains in York County Prison increasingly weighs in favor of a finding of unreasonable detention pursuant to the analysis set forth in *Chavez-Alvarez*.

Taking into account the facts of petitioner's situation as examined above, this court concludes that the petitioner's detention has reached the "tipping point," and has continued for an unreasonable amount of time in violation of due process. Therefore, the petitioner is entitled to an individualized bond hearing, in which the respondent bears the burden of demonstrating that "detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3d Cir. 2011).

Consistent with precedent within this district, the court is mindful of the deference owed to the decision-making agency to oversee matters within its jurisdiction. *See, e.g.,* Gourzong v. Lowe, No. 3:15-CV-1969, 2016 WL 109851, at *2 (M.D. Pa. Jan. 11, 2016); Deptula v. Lynch, No. 1:15-CV-2228, 2016 WL 98152, at *5 (M.D. Pa. Jan. 8, 2016); Banton v. Sabol, No.

3:CV-12-1594, 2013 WL 1736804 (M.D. Pa. Apr. 22, 2013); Bautista v. Sabol, 862 F. Supp. 2d 375, 382 (M.D. Pa. 2012). Because the Immigration Court has the expertise, familiarity, and authority to exercise jurisdiction over bond hearings such as those contemplated under *Chavez-Alvarez,* the court orders that an Immigration Judge conduct an individualized bond hearing for the petitioner, within thirty (30) days of this opinion.

## III.   Conclusion

In light of the foregoing analysis, the court finds that the petitioner has been detained by ICE for an unreasonable amount of time, in violation of his Constitutional due process rights. Therefore, the court will grant the instant petition for writ of habeas corpus, and order that the petitioner shall be provided with an individualized bond hearing before an Immigration Judge within thirty (30) days of this decision. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: May 3, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0271-01.wpd