**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SIXTO ALBERTO SORIANO,** : | |
| **Petitioner** : | |
| **v.** : | **CIVIL ACTION NO. 3:16-0271** |
| **MARY SABOL, Warden,** *et al.*, : | **(Judge Mannion)** |
| **Respondents** : | |

**MEMORANDUM**

Before the court is petitioner Sixto Alberto Soriano's motion for attorney's fees, expenses and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §2412 and 5 U.S.C. §504. (Doc. 16). Petitioner contends that he is entitled to an award under the EAJA because he was the prevailing party with respect to his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. §2241, (Doc. 1), and because the government's position was not substantially justified. Petitioner, an alien, who was a lawful permanent resident of the United States, was taken into custody by ICE and removal proceedings against him were commenced based on his 15-year old state conviction for marijuana-related offenses which were found to constitute aggravated felonies pursuant to 8 U.S.C. §1227(a)(2). After being mandatorily detained by ICE for almost seven months during the removal proceedings, petitioner filed his habeas petition claiming that his detention was unreasonably prolonged, in violation of 8 U.S.C. §1226(c), and in violation of

his procedural and substantive due process rights. He requested that he be provided with a bond hearing conducted by this court or by an Immigration Judge. The court granted the habeas corpus petition to the extent that it ordered the government to provide petitioner with an individualized bond hearing before an Immigration Judge. For the reasons set forth below, the court will **GRANT** petitioner's motion and award him attorney's fees.

## I. RELEVANT BACKGROUND[1]

On May 3, 2016, the court issued a memorandum, (Doc. 8), and order, (Doc. 9), finding that petitioner was mandatorily detained by ICE for an unreasonable amount of time, in violation of his constitutional due process rights. Therefore, the court granted petitioner's petition for writ of habeas corpus, (Doc. 1), and ordered that he be provided with an individualized bond hearing before an Immigration Judge within 30 days. On May 19, 2016, an Immigration Judge held a bond hearing and granted petitioner's request for a change in custody status also ordering that petitioner be released from custody under a bond of $3,500. Petitioner was then released from ICE custody.

---

[1]Since the complete background of the underlying habeas case was detailed in the court's May 3, 2016 memorandum, (Doc. 8), it shall not be fully repeated herein. *See* Soriano v. Sabol, 183 F.Supp.3d 648, 2016 WL 2347904 (M.D.Pa. 2016).

On June 29, 2016, respondents filed a notice of appeal regarding the court's May 3, 2016 order. (Doc. 10). Petitioner filed a notice of cross-appeal on July 13, 2016. (Doc. 11). *See* C.A. Nos. 16-3008 & 16-3134. On September 15, 2016, the Third Circuit issued an order, pursuant to an agreement of the parties, dismissing both appeals under Fed.R.App.P. 42(b), and directing that each party bear their own costs with respect to the appeals. (Doc. 15).

On October 14, 2016, petitioner filed his instant motion for attorney's fees, expenses and costs pursuant to the EAJA, 28 U.S.C. §2412, since he was the prevailing party with respect to his underlying habeas petition. (Doc. 16). He simultaneously filed his brief in support of his motion with exhibits. (Doc. 17). On October 28, 2016, the government[2] filed its brief in opposition to the motion, (Doc. 18), with exhibits, (Doc. 18-1), arguing that the motion should be denied since their position was substantially justified with respect to all of the proceedings. Petitioner filed a traverse on November 4, 2016. (Doc. 19).

## II.    DISCUSSION

Petitioner seeks an award attorney's fees under the EAJA in the amount

---

[2]The court refers to all of the respondents herein jointly as the government.

of $7,541.68. "[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." Patel v. Attorney General of the U.S., 426 Fed.Appx. 116, 117 (3d Cir. 2011) (citing Astrue v. Ratliff, 560 U.S. 586, 130 S.Ct. 2521, 2530 (2010)). Under the EAJA, "[a] federal court is required to award the prevailing party its fees and other expenses incurred in any civil action, unless the court concludes that the Government's position in all phases of the litigation 'was substantially justified or that special circumstances make an award unjust.'" Id. (citing 28 U.S.C. §2412(d)(1)(A)).

Moreover, "[t]he EAJA provides that a prevailing party may recover 'costs' as enumerated in 28 U.S.C. §1920." Id. at 118 (citing 28 U.S.C. §2412(a). "Additionally, such party may be awarded 'fees and other expenses.'" Id. (citing 28 U.S.C. §2412(d)(1)(A)).

The EAJA applies to a §2241 habeas action challenging immigration-related detention. *See* Wilks v. U.S. Dept. of Homeland Sec., 2009 WL 1542771 (M.D.Pa. June 2, 2009); Walker v. Lowe, 2016 WL 6082289 (M.D.Pa. Oct. 17, 2016).

Initially, the court finds that petitioner was the prevailing party in this case and thus, he qualifies for an award of attorney's fees, expenses and costs under the EAJA. Petitioner is a prevailing party since he "has been awarded some relief by a court." Buckhannon Bd. and Care Home, Inc. v.

4

West Va. Dep't of Health and Human Resources, 532 U.S. 598, 603 (2002); Gonzales, 416 F.3d at 210 (Third Circuit held that "an alien whose petition for review of a BIA decision is granted by our Court and whose case is then remanded to the BIA is a prevailing party under the EAJA"). There is also no dispute that petitioner falls within the EAJA's financial limitation that precludes parties whose net worth exceeds $2,000,000 at the time the action was filed from recovery of fees. 28 U.S.C. §2412(d)(2)(B). *See* Doc. 17, Ex. B, petitioner's Declaration.

Although the EAJA provides that the court can deny fees where "special circumstances make an award unjust", 28 U.S.C. §2412(d)(1)(A), the government does not contend that "special circumstances" exist in this case. Nor does the court find any "special circumstances."

The parties dispute whether the government's position was substantially justified. In Patel, 426 Fed.Appx. at 117 n. 4, the Third Circuit noted that "[a] position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person.'" (citing Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541 (1988)). Also, "it is the Government's burden to demonstrate its position was grounded in a reasonable basis in fact and law with a reasonable connection between the two." Id. (citing Pierce, 487 U.S. at 565). The court "do[es] not assume that the Government's position was not substantially justified simply because it lost on the merits." Id. (citing Kiareldeen v. Ashcroft,

273 F.3d 542, 554 (3d Cir. 2001)). Additionally, "[t]he Government's 'position' includes both the underlying agency action and its litigation position in the proceedings arising from that action." Id. at 117 (citing Johnson v. Gonzales, 416 F.3d 205, 210 (3d Cir. 2005)). "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. §2412(d)(1)(A).

Thus, "the government must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal th6eory advanced." Morgan v. Perry, 142 F.3d 670, 684 (3d Cir. 1998). Additionally, the "EAJA is a waiver of sovereign immunity, however, so it must be construed strictly in favor of the United States." Walker v. Attorney Gen. U.S., 625 Fed.Appx. 87 (3d Cir. 2015).

Petitioner contends that the government's position was not substantially justified with respect to both the removal proceedings and the habeas proceedings. Specifically, petitioner raises the following grounds to support his contention:

> 1) a fifteen year delay in initiating removal proceedings against Mr. Soriano, followed by ten-months of arbitrary detention in a county jail; 2) DHS's inaccurate assertion that "the record of proceedings in [Mr. Soriano's removal] case makes clear that the court has already sustained the aggravated felony charge of

deportability," when in fact the IJ had expressed some agreement with Mr. Soriano on that issue; 3) the disingenuous claim that Mr. Soriano's challenges to removal are a "dilatory tactic, likely designed to prolong the [his] detention," even though Mr. Soriano had simply raised good faith arguments based on Third Circuit precedent, which in turn has been reaffirmed by more recent unpublished appellate decisions; and 4) the position that detention under §1226(c) cannot be considered unreasonable until it has surpassed one year, even though *Chavez-Alvarez* adopts a fact-specific framework for determining when detention becomes unreasonable during the six-month to one-year mark.

(Doc. 17, pp. 10-11).

As mentioned, "[t]he government must justify its position not only in the litigation but also its position in the agency proceedings leading up to the litigation." Wilks, 2009 WL 1542771, *2 (citing Johnson, 416 F.3d at 210). Based on all of the above stated reasons as detailed by petitioner, the record in this case, as well as the reasons the court discussed in its May 3, 2016 memorandum, (Doc. 8), the court finds that the government's position was substantially justified with respect to the agency removal proceedings. The court finds that the government's position was not substantially justified with respect to its failure to afford petitioner with a bond hearing in his habeas proceedings, i.e., the fourth above stated claim of petitioner. *See* Walker v. Lowe, 2016 WL 6082289, *3 (The court found that since the alien petitioner had been detained in immigration pre-removal custody for almost two years when he filed his habeas petition, "[t]he Government's position ceased to be

substantially justified, either in law or fact, sometime after [petitioner] had been incarcerated for more than six months" based on *Chavez-Alvarez* which was decided on April 9, 2015.).

The backdrop of the removal proceedings initiated against the petitioner as detailed in the court's May 3, 2016 memorandum, (Doc. 8), are as follows:

> In 1998, the petitioner was arrested for and pled guilty to possession of a small amount of marijuana in violation of 35 Pa. Stat. Ann. §780-113(a)(31). (Doc. 1, Ex. G). Later, in 1999, petitioner pled guilty to one count of possession with intent to manufacture or deliver marijuana in violation of 35 Pa. Stat. Ann. §780-113(a)(30), and was sentenced to 12 months of probation. *Id.* Then, in 2000, the petitioner again pled guilty to one count of possession with intent to manufacture or deliver marijuana in violation of 35 Pa. Stat. Ann. §780-113(a)(30) and one count of possession with intent to use drug paraphernalia in violation of 35 Pa. Stat. Ann. §780-113(a)(32), and was sentenced to six (6) to twenty-three (23) months in prison. *Id.*
>
> Fifteen years later, on July 24, 2015, the petitioner was taken into custody by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE") and placed in removal proceedings at York County Prison. (Doc. 1, Ex. H). The basis for removal of the petitioner is that he is a non-citizen and his prior marijuana offenses allegedly constitute aggravated felonies pursuant to 8 U.S.C. §1227(a)(2). *Id.* The petitioner remains in "mandatory custody" at York County Prison pursuant to 8 U.S.C. §1226(c). (Doc. 6, Ex. G).

Petitioner states that he was taken into custody by ICE and removal proceedings against him were commenced about 15 years after his state conviction for marijuana-related offenses and, that he was then mandatorily

detained at the York County Prison for over six months without being given a bond hearing during the removal proceedings. He contends that it was unreasonable for the government to have delayed 15 years before initiating removal proceedings against him, and to then detain him without bond during those proceedings.

As the government explains regarding why it commenced removal proceedings against petitioner despite the 15-year delay, (Doc. 18, p. 7), "DHS interpreted the legal precedent as to whether Pennsylvania's criminal statute qualified as an aggravated felony under the 'categorical approach' set forth by the Supreme Court based on the status of the law at that time. See Moncrieffe v. Holder, ---U.S.---, 133 S. Ct. 1678, 1684-85 (2013)." Also, as the government states, (Id., pp. 7-8), "[t]he Immigration Judge noted that the Third Circuit had not decided in a precedential decision whether the statute under which Soriano was convicted qualified as an aggravated felony in the court's decision dated March 10, 2016." (*See also* Doc. 18, Exs. A & B). Thus, in his March 10, 2016 decision, the Immigration Judge found that DHS was correct and that petitioner's Pennsylvania criminal conviction qualified as aggravated felony. The Immigration Judge then found that petitioner was ineligible for cancellation of removal under INA §240A(a)(3). (Doc. 18, Ex. B). The Immigration Judge also issued an order directing that petitioner be removed to Ecuador. (Doc. 7, Ex. 4).

As such, the court finds that the government was substantially justified at the agency level in commencing removal proceedings against petitioner based on its contention that his marijuana-related convictions qualified as aggravated felonies subjecting him to removal. *See* Kiareldeen, 273 F.3d at 554 ("Substantial justification is measured on the basis of whether the government was justified in initiating the proceeding and going forward with the hearing before the immigration judge.").

Thus, the court finds no merit regarding two of the stated reasons upon which petitioner relies to support his request for fees, namely, his arguments with respect to the 15-year delay in commencing removal proceedings and the government's assertion that petitioner's challenges to removal are a "dilatory tactic, likely designed to prolong the [his] detention." As the government states, (Doc. 18, p. 14):

> First, the Third Circuit has observed that removal proceedings on prior convictions subjecting the alien to pre-final order mandatory detention, even years after such convictions, are permissible. Sylvain v. Attorney General, 714 F.3d 150, 161 (3d Cir. 2013). Thus, DHS was permitted to initiate removal proceedings and detain Soriano based on his previous convictions.
>
> Second, Respondent did not oppose the [habeas] petition based on an argument that Soriano was dilatory during his [removal] proceedings. At no time did Respondent seek to have any time in detention excluded based upon dilatory motions or arguments. Rather, Respondent noted in the recitation of the procedural history of removal proceedings that Soriano's claim to derivative citizenship was seen by DHS as lacking merit and likely to

prolong his detention. (Doc. 6 at 7-8.) However, Respondent did not oppose the petition or Soriano's time in detention based on any dilatory argument. Therefore, neither of these remaining arguments renders Respondent's opposition to the petition as not substantially justified.

With respect to the habeas proceedings, the court finds that the government was not substantially justified in arguing that under Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 473 (3d Cir. 2015), petitioner was not entitled to a bond hearing. *See Walker, supra*. Initially, the court notes that while the government argued that "[petitioner] filed his petition prematurely because he had only been detained for <u>less than six months</u> at the time he filed his habeas petition on February 17, 2016" however, since "[he] was taken into ICE custody on July 24, 2015", (Doc. 18, p. 9), at the time petitioner filed his habeas petition, he was mandatorily detained by ICE for six months and 25 days. Petitioner also argues "[the government's] position that mandatory detention under §1226(c) cannot be considered unreasonable until it has surpassed one year, is contrary to Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 473 (3d Cir. 2015)." (Doc. 19, p. 2). As petitioner points out, (Doc. 19, pp. 3-4), "[he] had been detained for 209 days (or 6 months and 25 days) when he filed his habeas petition, and 223 days (or 7 months and 8 days) when the government filed its response—both of which fall within the six-month window during which mandatory detention becomes unreasonable under

*Chavez-Alvarez.*"

Moreover, insofar as the government argued in its opposition to the habeas petition that petitioner had "been in pre-removal detention for less than one year" and was thus "within the acceptable six-month to one-year time frame", (Doc. 6, p. 11), as this court stated in its May 3, 2016 memorandum, (Doc. 8), the Third Circuit has not established a bright line for bond hearings in mandatory detention cases.

In reviewing the government's response to petitioner's habeas petition, the court also finds merit to petitioner's following claim:

> [B]y focusing on the fact that Mr. Soriano was subject to 1226(c), the government fails to recognize the unreasonableness of DHS's Motion for Immediate Removal Order, which the government relied on in opposing Mr. Soriano's habeas petition. In that motion, DHS claimed that the "record … makes clear [the immigration court] has already sustained the aggravated felony charge of deportability." (Doc. 6-1, p.3) This assertion gave the impression that Mr. Soriano was belaboring an already decided issue, when in fact the IJ who first handled the case had expressed agreement with Mr. Soriano's position. (Doc. 17-3, p. 29) Under *Chavez-Alvarez*, the bona fides of an alien's removal defense are a factor in assessing whether mandatory detention has passed the "tipping point"; thus, it was unreasonable for DHS to mischaracterize the removal proceedings in this manner (particularly when contemporaneous decisions issued by the BIA put the agency on notice of the merits of Mr. Soriano's position (see Doc. 7-1)).

(Doc. 19, p. 3).

As this court found in its May 3, 2016 memorandum, (Doc. 8),

petitioner's challenges and appeal to his removal order were "based upon bona fide claims and were not frivolous or made in bad faith."

The court finds merit to these stated contentions as well as petitioner's contention that "the relevant question [with respect to his habeas petition] was whether his detention had passed the 'tipping point' of reasonableness." (Id., pp. 2-3).

In deciding the merits of petitioner's habeas petition, the court framed that issue as whether, under the facts of this case, the petitioner's mandatory detention has become unreasonably prolonged such that he is entitled to an individualized bond hearing. (Doc. 8). The court then discussed *Chavez-Alvarez* and stated:

> In *Chavez-Alvarez,* the Court applied the balancing framework and ultimately found that "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez-Alvarez had been detained for one year, the burdens to Chavez-Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." *Chavez-Alvarez*, 783 F.3d at 478. The respondent cites to this language in support of its opposition to the instant petition. However, the respondent appears to interpret this language as stating that a detention between six (6) months and one (1) year is "acceptable" and a habeas petition commenced in such time-frame is "premature." (Doc. 6, p. 11). As is clearly evident in the previous discussion of applicable law, this is not what *Chavez-Alvarez* stands for. Instead, the Circuit Court in *Chavez-Alvarez* found that at some point in time after six (6) months of detention, the facts related to petitioner Chavez-Alvarez's detainment tipped such that due process required the government provide Chavez-Alvarez with a bond hearing. The

Court arrived at this conclusion after conducting a *fact-intensive investigation* of the circumstances, and did not arrive at this conclusion solely after counting the number of days that Chavez-Alvarez had been detained–as the respondent seems to infer.[3] Thus, the court rejects the respondent's argument that the petition is premature solely because the petitioner has not yet been detained for a full year.

Instead, the court must follow the balancing framework established in *Chavez-Alvarez* and conduct a factual inquiry to determine whether the petitioner's mandatory detention is no longer reasonable. The petitioner, here, was taken into ICE custody on July 24, 2015, and has remained in custody since that date. He has not been provided a bond hearing. As of today, the petitioner has been detained for nine (9) months. This is longer than the six-month time-frame outlined in *Demore* and also comports with Third Circuit precedent that finds any detention beyond the five month threshold to be suspect. Diop v. ICE/Homeland Sec., 656 F.3d 221, 233-34 (3d Cir. 2011). Further, nine months is within the six to twelve month time-frame contemplated in *Chavez-Alvarez.* Given the suspect nature of the length of detention, the court must carefully examine the petitioner's circumstances to determine whether this length is reasonable and comports with due process or whether it reaches the "tipping point" and requires a bond hearing.

*See* Soriano, 183 F.Supp.3d at 652.

The court concluded that petitioner's detention reached the "tipping

---

[3]In *Chavez-Alvarez*, the Court found that one (1) year of detention was presumptively unreasonable; however, this court interprets *Chavez-Alvarez* as also concluding that detention between six (6) months and one (1) year may well be unreasonable depending upon the factual circumstances. Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 478 (3d Cir. 2015) (citing  Diop v. ICE/Homeland Sec., 656 F.3d 221, 233-34 (3d Cir. 2011); Demore v. Kim, 538 U.S. 510, 531 (2003)).

point," and continued for an unreasonable amount of time in violation of due process. Therefore, the court found that petitioner was entitled to an individualized bond hearing.

To the extent that the government argues, in the alternative, (Doc. 18, pp. 12-13), that its "[o]pposition to Soriano's requested forum [i.e., this court as opposed to a hearing before the IJ] for a bond hearing alone made responding to the petition substantially justified", as petitioner points out, (Doc. 19, p. 4), "substantial justification on the part of the Government in opposing one of the [prevailing party's] claims does not render its position substantially justified as to all of its other claims." (citing Hanover Potato Products, Inc. v. Shalala, 989 F.2d 123, 131 (3d Cir. 1993) (The Third Circuit stated, "[w]e have already held that substantial justification on the part of the Government in opposing one of the plaintiff's claims does not render its position substantially justified as to all of its other claims.")).

The court thus finds that petitioner is entitled to recover his fees and costs, and it will grant his motion for attorney's fees under the EAJA, Doc. 16.

The court now considers whether the fees sought by petitioner are reasonable. At first, petitioner requested fees in the amount of $7,541.68. However, in his reply brief, (Doc. 19, pp. 6-7), he has recalculated this amount by reducing his fee request regarding his Third Circuit appeal in the amount of $541.67 (for 2.17 hours of appeal work) since each party was directed to

bear their own costs. However, he adds the fee in the amount of $780 for his attorney's work performed in preparing his reply brief in this case, i.e., 3.12 hours @ $250/hour rate. The court will include Conklin's additional 3.12 hours. See Walker v. Lowe, 2016 WL 608228, *5 (The court granted "Conklin['s] request[] [for] an additional 5.3 hours for time that he spent preparing the traverse to the Government's opposing brief, which is a 'fees on fees' request."). Thus, the revised number of total hours then becomes 31.13, i.e., 30.18 – 2.17 hours= 28.01; 28.01 + 3.12 = 31.13. After he offsets the stated amounts, petitioner's recalculated lodestar is $7,782.50. The government does not address the issue regarding the reasonableness of the amount of petitioner's fee request in its brief, but it notes that each party was to bear their own costs in the appeal. (Doc. 18). Petitioner has now eliminated his appeal cost from his request. Nonetheless, the court must still address the reasonableness of petitioner's fee request under the EAJA.

In support of his fee request, petitioner has submitted the Declaration of his counsel, Daniel Conklin, (Doc. 17-4), with an itemization attached detailing the work he performed on petitioner's habeas petition, the hours expended for the work and the total amount for the work billed at the hourly rate of $250. Conklin graduated from law school in 2010 and he avers that "[s]ince graduating from law school [his] practice has focused almost exclusively on [immigration] removal defense." Conklin, in "exercis[ing] billing

judgment to ensure that the amount ultimately claimed was reasonable" does not seek any amount for costs, fees and other expenses despite his entitlement to reimbursement for these expenditures. *See* Patel, 426 Fed.Appx. at 118. Petitioner also submitted the Declaration of Joseph C. Hohenstein, (Doc. 17-5), an immigration lawyer with over 20 years of experience "specializing in complex litigation in the federal and immigration court systems" attesting to the reasonableness of the fee amount petitioner seeks, including the work Conklin performed on petitioner's habeas case as well as the hours he spent on the case and the amount of his hourly rate.

The EAJA statutory rate is $125 per hour and petitioner's counsel seeks a $250 per hour rate in this case. Hohenstein justifies this discrepancy by averring that "no attorneys to [his] knowledge would have undertaken [this complex case] at the EAJA statutory rate of $125 per hour, even adjusted for inflation." Conklin avers that his hourly rate is justified since he "possess[es] specialized expertise in the immigration and detention issues raised by this case." He also avers that "[t]he $250.00 rate [he has] requested here is the prevailing market rate for an attorney of [his] experience and expertise." (Doc. 17-4). As such, Conklin argues that he is entitled to reimbursement for attorney's fees at a rate of $250 per hour because this immigration case required specialized expertise. In fact, in another case in this district, *Walker v. Lowe*, Conklin, who was petitioner's counsel, was awarded an hourly rate

of $250 by Judge Brann.

In Patel,426 Fed.Appx. at 118-119, the Third Circuit stated "[a contention that the case required specialized expertise] is inconsistent with the EAJA provision that 'attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.'" (citing 28 U.S.C. §2412(d)(2)(A)(ii)).

The EAJA, §2412(d)(2)(A)(ii), permits the court to award fees in excess of $125 per hour if it determines that an increase in the cost of living justifies a higher fee, the court makes such a finding in this case. The court concurs with the cost of living analysis recently performed by the court in Walker v. Lowe, 2016 WL 6082289, *3 (footnoted omitted), as follows:

> The late Honorable James F. McClure Jr., writing for this Court in 2010, found that with a habeas corpus matter, under the EAJA, "the statutory rate for attorney fees, adjusted for the cost of living, is $170.76 for work performed in 2009 and $174.72 for work performed in 2010." The Honorable David G. Larimer of the Western District of New York found that, in a request for fees in a social security matter under the EAJA, "$179.57 per hour for work performed in 2010, $185.04 per hour for 2011 and $193.15 per hour for 2014... adjusted for inflation, are reasonable."
> It is not clear what the cost of living increase should be per year. However, looking to these cases, it appears to be around 3%. Accordingly, if I extrapolate the statutory rate adjusted for cost of living set by Judge Larimer for 2014 by 3%, for 2015 the rate is $198.95 and for 2016 the rate is $204.92.

This court will adopt the *Walker* Court's rational and finds that the statutory rate adjusted for cost of living for 2016 is about $205. All of the work for which attorney's fees are sought in this case was performed in 2016.

Additionally, based on reasoning of *Walker v. Lowe*, as well as this court's own determination, it finds that special factors exist in this case justifying awarding Conklin fees at the $250/hour rate. Thus, the court will not reduce the lodestar hourly rate which is sought in this case.

The Walker Court, 2016 WL 6082289, *4, found that the case raised "complex jurisdictional, 'crimmigation' law, and detention issues", and that special factors, namely, Conklin's "specialized knowledge of immigration law, and the limited availability of attorneys who would have taken [Walker's] case at the statutory rate", justified his requested hourly rate of $250.00. In particular, the court in Walker, 2016 WL 6082289, *4, stated:

> The vast majority of the immigration bar in the United States does not engage in federal court litigation, and of those that do, only a small number would be willing to take on a case of this complexity. Moreover, there are no attorneys to my knowledge who would have undertaken such litigation at the EAJA statutory rate of $125 per hour, even adjusted for inflation.
>
> I am also familiar with the billing practices and rates of law firms in Pennsylvania. The $250 rate requested for Mr. Conklin is the prevailing market rate for attorneys of his experience and expertise. [ ]. Mr. Conklin is unique in that he as a high level of expertise even at an early stage of his career.

This court finds in the present case the same special factors identified by the court in *Walker* justify awarding Conklin an hourly rate of $250.00. Thus, the court finds that a rate of $250 per hour is reasonable. The court also recognizes that Conklin has very good credentials in immigration cases, he worked on Soriano's habeas case pro bono, and provided Soriano with excellent representation.

Next, the court considers the reasonableness of the number of hours worked by Conklin in this case. As the court is well aware of the facts of this case, it finds that Conklin's unopposed total number of hours for which he seeks reimbursement of 31.13, for work all related to the habeas case, is reasonable and fully supported by the record, including Conklin's Declaration and his detailed billing record. (Doc. 17-4, p. 4). Indeed, Conklin does not seeks fees for the immigration proceedings and, he states that he did not bill for certain other work in order to ensure the reasonableness of his fees despite the fact that he could have billed for this work. Thus, the court will not reduce the numbers of hours for which Conklin seeks to be reimbursed. Therefore, the court will award attorney's fees in the amount $7,782.50, i.e., $250/hour times the revised number of hours of 31.13.

## III. CONCLUSION

In light of the foregoing, the court finds that petitioner is entitled to recover his attorney's fees, and it will grant his motion for attorney's fees under the EAJA. (Doc. 16). The court will award attorney's fees in the amount.$7,782.50. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 1, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0271-02.wpd